UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                                    MASTER FILE NO. 12-md-02311

_____

In re: Bearings                                        HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

All Cases                                              2:12-cv-00500
_____/

OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

This matter is before the Court on Defendant AB SKF's Motion to Dismiss the

Consolidated Amended Complaints.  (Doc. No. 112).  The parties waived oral argument

prior to the scheduled hearing date on June 4, 2014.  For the reasons stated below,

Defendant's motion is **GRANTED**, and AB SKF is **DISMISSED**.

## I.      RELEVANT FACTS

Direct Purchaser Plaintiffs ("DPPs"), Automobile Dealership Plaintiffs ("ADPs"),

and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Plaintiffs") filed separate

consolidated class action complaints under Section 16 of the Clayton Act (15 U.S.C. §

26) for equitable and injunctive relief against several Defendants for violating Section 1

of the Sherman Act (15 U.S.C. § 1).  Plaintiffs allege Defendants engaged in a

conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of Bearings sold in

the United States for which they seek damages and other appropriate equitable relief.

Generally, Defendants are in the business of manufacturing or selling Bearings, which

are "friction-reducing devices that allow one moving part to glide past another moving part" and are used in the manufacture of automobiles. (Case No. 12-501, Doc. No. 100 at ¶¶ 43, 44).

Defendant AB SKF is a Swedish corporation with its principal place of business in Göteborg, Sweden. (Doc. No. 112, Ex. A, Decl. of Henrik Lange, Chief Financial Officer of AB SKF at ¶ 3). AB SKF is the 100% owner of its subsidiary SKF USA Inc. ("SKF USA"), and functions as the holding company for all of its companies across the world. (Id. at ¶ 4). It provides human resources and financial services to all of its subsidiaries. (Id.) As the holding company, AB SKF does not manufacture or sell any goods. (Id. at ¶ 5). It does not conduct any business in the United States or operate any manufacturing plants in the United States. (Id. at ¶¶ 6, 7). In addition, AB SKF does not maintain offices, have registered agents, maintain any bank account, or pay taxes in the United States. (Id. at ¶¶ 7, 9, 11, 12).

AB SKF maintains separate corporate bylaws, stock ledgers, and financial statements from that of SKF USA. (Id. at 13, 14). Although some individuals have worked for both AB SKF and SKF USA, no employee, manager, or board member has ever simultaneously worked for both companies. (Id. at 16). In addition, SKF USA maintains its own bank accounts and payroll without any control from AB SKF. (Doc. No. 112, Ex. B, Decl. of Poul Jeppesen, Chief Executive Officer of SKF USA, Inc. at ¶ 6, 7). SKF USA manages its own budget, conducts its own board meetings, and prepares its own financial statements separate from AB SKF. (Id. at ¶¶ 8-10). SKF USA coordinates and implements its own marketing strategies to target customers in the

2

United States.  (Id. at ¶ 13).  AB SKF does not control the daily operation of SKF USA. (Id. at ¶ 14).

Plaintiffs all allege that AB SKF, directly or through its wholly-owned or controlled subsidiaries, manufactured, marketed, or sold Bearings that were purchased in the United States, including in this District, during the Class Period.  See (Case No. 12-501, Doc. No. 100 at ¶ 26); (Case No. 12-502, Doc. No. 67 at ¶ 133); (Case No. 12-503, Doc. No. 68 at ¶ 90).  In addition, DPPs allege that AB SKF maintains 28 of its 140 global manufacturing sites in the United States.  (Case No. 12-501, Doc. No. 67 at ¶ 26).

ADPs include several additional allegations in their complaint including: (1) AB SKF and SKF USA share numerous executives, (2) AB SKF reports sales by business segment rather than by subsidiary, (3) sales between all subsidiaries are jointly reported in the annual report, (4) AB SKF acquired a North American company in 2008, (5) the management overseeing SKF's Automotive Division decides where to open new facilities, and (6) twenty percent of SKF's sales were in the United States.  (Case No. 12-502, Doc. No. 67 at ¶¶ 134-38).  EPPs include substantially similar allegations in their amended complaint.  See (Case No. 12-503, Doc. No. 68 at ¶¶ 91-94).  Plaintiffs collectively assert that AB SKF participated in the alleged price-fixing conspiracy aimed at the United States.

## II.    STANDARD OF REVIEW

Before answering a complaint, a defendant may move for dismissal based on lack of personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of

establishing that jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

If a district court rules on the motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). The district court is granted considerable discretion in this decision and will be reversed only for abuse of discretion. Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991); Mich. Nat. Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989). The method the court selects will affect the magnitude of the burden on the plaintiff to avoid dismissal. Serras, 875 F.2d at 1214. Where, as is the case here, the court relies solely on the parties' affidavits to reach its decision on the motion, the burden rests on the plaintiff to establish a *prima facie* showing of jurisdiction in order to avoid dismissal, Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must consider the pleadings and affidavits in the light most favorable to the plaintiff. CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

In considering 12(b)(2) motions, the court does not weigh the controverting assertions of the moving party due to its interest in "prevent[ing] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit

4

denying all jurisdictional facts." CompuServe, Inc., 89 F.3d at 1262 (quoting Theunissen, 935 F.2d at 1459).

**III.   ANALYSIS**

**A.   Sufficiency of the Pleadings**

In its motion, AB SKF asserts that dismissal is appropriate becuase Plaintiffs have failed to state a claim against them under Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). However, the Court first directs its attention to whether it may exercise personal jurisdiction over AB SKF.

**B.   Personal Jurisdiction**

The Supreme Court has held that to subject a nonresident defendant to personal jurisdiction, due process requires that he must "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "conduct and connection with the forum State" must be "such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exists. Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002).

When "a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States, and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States." Med. Mut. v.

5

deSoto, 245 F.3d 561, 567-68 (6th Cir. 2001).  For federal antitrust claims, 15 U.S.C. § 22 authorizes services of process over an antitrust defendant "wherever it may be found."  Consequently, personal jurisdiction over AB SKF is dependent on whether it has "sufficient minimum contacts with the United States" to satisfy the due process requirements of the Fifth Amendment.  Med. Mut. of Ohio, 245 F.3d at 566-67.  "This inquiry parallels the more traditional personal-jurisdiction analysis under which a defendant must have minimum contacts with the forum state pursuant to the state's long-arm statute."  Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449-50 (6th Cir. 2012) (citing Med. Mut. of Ohio, 245 F.3d at 566-67) (internal quotations omitted).

A party is subject to the personal jurisdiction of the Court through either general or specific jurisdiction.  See J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2787-89 (2011).  Whether general or specific jurisdiction exists turns on the nature of the defendant's contacts with the forum.  Plaintiffs argue both theories support the Court's exercise of personal jurisdiction over AB SKF.

        1.    General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ----, 131 S. Ct. 2846, 2851 (2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 317(1945). The Sixth Circuit has held that a court may exercise general jurisdiction over a foreign corporation in those circumstances where the court has jurisdiction over a subsidiary and the domestic subsidiary is a mere alter-ego of the parent.  Carrier Corp., 673 F.3d

6

at 450-51.  This "alter-ego theory" of personal jurisdiction "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company *exerts so much control over the subsidiary* that the two do not exist as separate entities but are one and the same for purposes of jurisdiction."  Id. (quoting Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008)).  After review of the allegations, the Court finds Plaintiffs failed to demonstrate that AB SKF exercises the requisite degree of control over SKF USA sufficient to impose general jurisdiction.

In Alexander Associates, Inc. v. FCMP, Inc., 10-12355, 2012 WL 1033464 (E.D. Mich. March 27, 2012), the district court articulated the factors that allow a court to disregard separate corporate identities.  The court stated:

> Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

Id. at *18 (citations omitted).

Plaintiffs argue that AB SKF and SKF USA are essentially the same entity because AB SKF exercises substantial dominion and control over its United States-based subsidiary.  SKF USA is incorporated in Delaware, has its principal place of business in Pennsylvania, and has numerous other contacts with the United States. (Doc. No. 112, Ex. B, Decl. of Poul Jeppesen at ¶ 4).  Thus, Plaintiffs attempt to impute personal jurisdiction over AB SKF through SKF USA's contacts with the forum.

7

Plaintiffs point out that AB SKF does not differentiate between subsidiaries in its annual reports and that AB SKF has publicly commented on its acquisition of United States-based companies.  They also assert that the companies share numerous executives and that AB SKF has a single code of conduct and compliance program applicable to all of its companies worldwide.  However, Plaintiffs failed to allege that SKF USA is undercapitalized, that SKF USA purchases all of its supplies from AB SKF, that AB SKF and SKF USA share principal offices, or that most of AB SKF's revenue is derived from SKF USA.  Lastly, most of Plaintiffs' alleged contacts are refuted by AB SKF.

First, the Declaration of Poul Jeppesen wholly contradicts Plaintiffs allegations of common executives or board members.  (Id. at ¶¶ 11, 12) (contradicting Plaintiff's claims that Tom Johnstone serves as an executive or board member of SKF USA and that Henrik Lange served as a board member of SKF USA).  Even assuming those allegations are true, shared management, alone, is insufficient.  SKF USA provided evidence that it manages its own marketing, payroll, budget, and that although AB SKF implements companywide policies, it does not control the daily operations of SKF USA.  The fact that AB SKF's annual reports do not provide separate financial statistics carries little weight.  The annual reports are filed in accordance with International Financial Reporting Standards adopted by the European Union and Swedish authorities.  (Doc. No. 126 at 2).  In addition, AB SKF's public comment on the acquisition of United States based companies does not evidence dominion and control over SKF USA for an inference that AB SKF is "at home" in the United States.  Finally, Plaintiffs' contention that AB SKF's acquisition of Kaydon Corp. evidences AB SKF's decision to target the

8

United States market is unpersuasive. The acquisition occurred after the filing of Plaintiffs' complaints, and is therefore irrelevant to jurisdictional analysis.

Consequently, Plaintiffs failed to demonstrate that the Court may disregard the corporate form and exercise general jurisdiction over AB SKF. Other than allegations that AB SKF holds itself and all of its companies out as one "SKF" company, AB SKF does not exercise "so much control" over SKF USA that both companies are one and the same for jurisdictional purposes. See Carrier Corp., 673 F.3d at 450-51. Thus, the Court will next determine whether specific jurisdiction is appropriate based on AB SKF's contacts with the United States.

2.      Specific Jurisdiction

Specific jurisdiction subjects a defendant to actions in the forum arising out of or relating to the defendant's contacts with the forum. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984). In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally laid out in Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401 F.2d at 381).

a.      Purposeful Availment

The first issue to be addressed relative to specific jurisdiction is whether AB SKF "purposefully avail[ed] [itself] of the privilege of acting in the forum or causing a consequence in the forum." Mohasco, 401 F.2d at 381.  "Purposeful availment" means that the defendant's "contacts proximately result from the actions by defendant *himself* that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).  This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'" Id. at 475 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984); Helicopteros, 466 U.S. at 417).  Plaintiffs argue two theories of specific jurisdiction: conspiracy theory; and stream of commerce.

i.      Conspiracy Theory

Plaintiffs first argue that AB SKF purposefully availed itself of the privilege of acting in the United States by engaging in a conspiracy to fix, maintain, and/or stabilize the price of Bearings.  Each of Plaintiffs' complaints alleges that AB SKF participated in the conspiracy.  For example, ADPs allege:

> In its 2011 Annual Report, SKF explained that, along with other companies in the Bearing industry, it is 'part of an investigation by the European Commission regarding a possible violation of EU antitrust rules.' SKF has also acknowledged that EU officials have visited its Gothenburg, Sweden and Schweinfurt, Germany facilities.  SKF's 2012 Annual Report stated it was likely that the EC would impose a fine on it.

(Case No. 12-502, Doc. No. 67 at ¶ 198).

10

The Court has already rejected Plaintiffs' alter-ego argument. Thus, regardless of the entanglements of AB SKF and other Defendants, such as its subsidiary SKF USA, the Court has no basis for imputing the actions of one Defendant to another for jurisdictional purposes in the absence of an explicit directive by the Sixth Circuit. See Weather Underground, Inc. v. Navigation Catalyst Sys., Inc., 688 F. Supp. 2d 693, 696 (E.D. Mich. 2009). Simply put, the Sixth Circuit has not endorsed the theory that sufficient minimum contacts to exercise personal jurisdiction may be based upon the acts of a co-conspirator, performed in the forum in furtherance of the conspiracy, over a nonresident that has no other contacts with the forum. At most, in 1981, the Sixth Circuit acknowledged the existence of the theory, but has yet to adopt it. See Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1236 (6th Cir. 1981).

ii.      Stream of Commerce

Next, Plaintiffs argue that AB SKF purposefully availed itself of the laws and protections of the United States by placing Bearings into the stream of commerce through its subsidiary SKF USA. This theory permits personal jurisdiction over a defendant that directs its products into a forum's market. See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987).

The Court previously rejected this theory of purposeful availment based on similar facts in the Wire Harness case. See In re Automotive Parts Antitrust Litig., 2013 WL 2456611, at *5 (E.D. Mich. June 6, 2013). The defendant in that case sold wire harnesses to auto manufacturers, but did not control their distribution decisions, and thus the Court found no purposeful availment. It is undisputed that AB SKF does not manufacture or sell any products in the United States and the Court has already

11

rejected Plaintiffs' attempts to demonstrate that AB SKF and SKF USA are alter-egos. Specific jurisdiction over AB SKF is not warranted through its subsidiary's placement of goods into the United States market.

In sum, Plaintiffs failed to demonstrate specific jurisdiction over AB SKF under either theory. AB SKF has no contacts with the United States other than through its subsidiary, SKF USA. Plaintiffs failed to demonstrate that AB SKF exerts so much control over SKF USA that the two companies are one and the same, and thus personal jurisdiction is not appropriate.

b.     Arising From/Substantial Connection

Because Plaintiffs did not meet the first element of the test articulated in Mohasco, analysis of the remaining elements is unnecessary. Each element of the test "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked." LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1303 (6th Cir. 1989).

**C.     Jurisdictional Discovery**

Plaintiffs also request jurisdictional discovery in the event the Court finds the exercise of personal jurisdiction over AB SKF is unwarranted. Plaintiffs, however, do not indicate what additional facts they expect to discover.

Here, the Court finds no reasonable basis to expect that further discovery would reveal contacts sufficient to support personal jurisdiction. AB SKF functions merely as a Swedish holding company for several SKF subsidiaries and does not manufacture or sell any products. AB SKF has virtually no ties to the United States. The jurisdictional basis alleged by Plaintiffs is entirely based on SKF USA's contacts with the forum, and

therefore the Court finds such discovery is unwarranted.  Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir. 1981) (affirming district court's denial of jurisdictional discovery which found no reasonable basis to expect that further discovery would reveal evidence to support jurisdiction).

**IV.    CONCLUSION**

Because personal jurisdiction over AB SKF is unwarranted, the Court declines to address AB SKF's argument that Plaintiffs failed to state a claim under Fed. R. Civ. P. 12(b)(6).  Accordingly, Defendant AB SKF's motion to dismiss is **GRANTED**.  AB SKF is **DISMISSED** from the action.

**IT IS SO ORDERED.**

Date:   July 3, 2014                         s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 3, 2014.

                                              s/ Kay Doaks
                                              Case Manager