UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                                  MASTER FILE NO. 12-md-02311

_____

In re: Bearings                                      HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

All Cases                                            2:12-cv-00500
_____/

OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION

Before the Court is Defendant Schaeffler AG's Motion to Dismiss the Direct Purchaser Plaintiffs, Dealership Plaintiffs, and End-Payor Plaintiffs' Consolidated Amended Complaints for Lack of Personal Jurisdiction.  (Doc. No. 113).  The Court heard oral argument on the motion on June 4, 2014, and at the conclusion of the hearing, took the matter under advisement.  For the reasons stated below, Defendant's motion is **GRANTED**, and Schaeffler AG is **DISMISSED**.

I.    RELEVANT FACTS

Direct Purchaser Plaintiffs ("DPPs"), Automobile Dealership Plaintiffs ("ADPs"), and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Plaintiffs") filed separate consolidated class action complaints under Section 16 of the Clayton Act (15 U.S.C. § 26) for equitable and injunctive relief against several Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1).  Plaintiffs allege Defendants engaged in a conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of Bearings sold in

the United States for which they seek damages and other appropriate equitable relief. Generally, Defendants are in the business of manufacturing or selling Bearings, which are "friction-reducing devices that allow one moving part to glide past another moving part" and are used in the manufacture of automobiles. (Case No. 12-501, Doc. No. 100 at ¶¶ 43, 44).

Defendant Schaeffler AG is a German corporation with its principal place of business in Herzogenaurach, Germany. It does not own property or conduct business in the United States. Schaeffler AG maintains that it is a holding company for the Schaeffler group of companies around the world and does not manufacture or sell Bearings itself. (Doc. No. 113, Ex. B, Decl. of Klaus Deißenberger, General Counsel for Schaeffler AG at ¶ 4). It is the 100% shareholder of Schaeffler Group USA, Inc. ("Schaeffler USA"), also named as a Defendant in Plaintiffs' consolidated complaints. (Id. at ¶ 4). In addition, Schaeffler AG does not have offices or registered agents in the United States and has never been incorporated in the United States. (Id. at ¶¶ 6, 7, 9). Schaeffler AG does not conduct meetings in the United States, although board members occasionally travel to the United States for meetings and trade shows. (Id. at ¶ 10). It does not maintain any U.S. bank accounts or pay U.S. taxes. (Id. at ¶¶ 11, 12).

As the holding company, Schaeffler AG's functional role is to provide administrative services to its group of companies, but the companies keep separate financial records. (Id. at ¶¶ 13, 14). Schaeffler AG does not exercise control over the daily functions of co-Defendant Schaeffler USA. (Doc. No. 113, Ex. B, Decl. of Bruce Warmbold, President and CEO of Schaeffler Group USA Inc. at ¶ 5). In addition,

2

although Schaeffler AG board members have held positions on the board of directors of Schaeffler USA, the two entities do not share board members or executives, and the positions are never held simultaneously. (Doc. 129, Ex. 1, Decl. of Steven Crow, General Counsel and Secretary of Schaeffler Group USA Inc. at ¶ 5).

DPPs allege that "Schaeffler AG – directly or through its subsidiaries, which it wholly-owned and controlled – manufactured, marketed, or sold Bearings that were purchased in the United States, including in this District, during the Class Period." (Case No. 12-501, Doc. No. 100 at ¶ 24). ADPs allege similar facts, but also allege that "Schaeffler Group USA and Schaeffler AG have shared numerous executives." (Case No. 12-502, Doc. No. 67 at ¶ 131). In addition, EPPs also include similar allegations as ADPs in their complaint. See (Case No. 12-503, Doc. No. 68 at ¶¶ 84-88). Collectively, Plaintiffs argue that Schaeffler AG participated in the alleged price-fixing conspiracy aimed at the United States.

## II.   STANDARD OF REVIEW

Before answering a complaint, a defendant may move for dismissal based on lack of personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). "Where personal jurisdiction is challenged in a 12(b)(2) motion, the plaintiff has the burden of establishing that jurisdiction exists." Am. Greetings Corp. v. Cohn, 839 F. 2d 1164, 1168 (6th Cir. 1988); see also McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936) (plaintiff "must allege in his pleading the facts essential to show jurisdiction").

If a district court rules on the motion before trial, the court, in its discretion, "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of

the motion; or it may conduct an evidentiary hearing on the merits of the motion."
Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting
Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)).  The district
court is granted considerable discretion in this decision and will be reversed only for
abuse of discretion.  Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991);
Mich. Nat. Bank v. Quality Dinette, Inc., 888 F.2d 462, 466 (6th Cir. 1989).  The method
the court selects will affect the magnitude of the burden on the plaintiff to avoid
dismissal.  Serras, 875 F.2d at 1214.  Where, as is the case here, the court relies solely
on the parties' affidavits to reach its decision on the motion, the burden rests on the
plaintiff to establish a *prima facia* showing of jurisdiction in order to avoid dismissal,
Intera Corp. v. Henderson, 428 F.3d 605, 615 (6th Cir. 2005), and the court must
consider the pleadings and affidavits in the light most favorable to the plaintiff.
CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1261-62 (6th Cir. 1996).

In considering 12(b)(2) motions, the court does not weigh the controverting
assertions of the moving party due to its interest in "prevent[ing] non-resident
defendants from regularly avoiding personal jurisdiction simply by filing an affidavit
denying all jurisdictional facts."   CompuServe, Inc., 89 F.3d at 1262 (quoting
Theunissen, 935 F.2d at 1459).

### III.   ANALYSIS

#### A.   Personal Jurisdiction

The Supreme Court has held that to subject a nonresident defendant to personal
jurisdiction, due process requires that he must "have certain minimum contacts with [the
forum] such that the maintenance of the suit does not offend 'traditional notions of fair

4

play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)
(quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The defendant's "conduct and
connection with the forum State" must be "such that he should reasonably anticipate
being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S.
286, 297 (1980). The party seeking to assert personal jurisdiction bears the burden of
demonstrating that such jurisdiction in fact exists. Neogen Corp. v. Neo Gen Screening,
Inc., 282 F.3d 883, 887 (6th Cir. 2002).

When "a federal court exercises jurisdiction pursuant to a national service of
process provision, it is exercising jurisdiction for the territory of the United States, and
the individual liberty concern is whether the individual over which the court is exercising
jurisdiction has sufficient minimum contacts with the United States." Med. Mut. v.
deSoto, 245 F.3d 561, 567-68 (6th Cir. 2001). For federal antitrust claims, 15 U.S.C. §
22 authorizes services of process over an antitrust defendant "wherever it may be
found." Consequently, personal jurisdiction over Schaeffler AG is dependent on
whether it has "sufficient minimum contacts with the United States" to satisfy the due
process requirements of the Fifth Amendment. Med. Mut. of Ohio, 245 F.3d at 566-67.
"This inquiry parallels the more traditional personal-jurisdiction analysis under which a
defendant must have minimum contacts with the forum state pursuant to the state's
long-arm statute." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 449-50 (6th Cir.
2012) (citing Med. Mut. of Ohio, 245 F.3d at 566-67) (internal quotations omitted).

A party is subject to the personal jurisdiction of the Court through either general
or specific jurisdiction. See J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780,
2787-89 (2011). Whether general or specific jurisdiction exists turns on the nature of

the defendant's contacts with the forum.  In their collective response to Schaeffler AG's motion to dismiss, Plaintiffs argue that personal jurisdiction exists under both theories.

      1.     General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. ----, 131 S. Ct. 2846, 2851 (2011) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 317(1945). The Sixth Circuit has held that a court may exercise general jurisdiction over a foreign corporation in those circumstances where the court has jurisdiction over a subsidiary and the domestic subsidiary is a mere alter-ego of the parent.  Carrier Corp., 673 F.3d at 450-51.  This "alter-ego theory" of personal jurisdiction "provides that a non-resident parent corporation is amenable to suit in the forum state if the parent company *exerts so much control over the subsidiary* that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." Id. (quoting Estate of Thomson v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008)).  Viewing Plaintiffs' allegations in the light most favorable to them, the Court finds Plaintiffs failed to demonstrate that Schaeffler AG exercises the degree of control over Schaeffler USA sufficient for general jurisdiction.

In Alexander Associates, Inc. v. FCMP, Inc., 10-12355, 2012 WL 1033464 (E.D. Mich. March 27, 2012), the district court articulated the factors that allow a court to disregard separate corporate identities.  The court stated:

> Facts tending to show the existence of an alter ego relationship include if
> the parent and subsidiary share principal offices, if they share board

6

members or executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

Id. at *18 (citations omitted).

The Declaration of Klaus Deißenberger makes it clear that Schaeffler AG has no direct contacts with the United States. Instead, Plaintiffs argue that general jurisdiction is appropriate given Schaeffler AG's extensive control over Schaeffler USA. In other words, although Schaeffler AG has no contacts with the United States, Plaintiffs assert Schaeffler AG is indirectly amenable to suit through Schaeffler USA's systematic and continuous contacts with the forum.

Plaintiffs rely on their allegations that Schaeffler AG and Schaeffler USA have shared numerous executives. However, Schaeffler AG provided evidence that no individual has ever simultaneously served as an executive of both Schaeffler AG and Schaeffler USA. In addition, no Schaeffler USA executive has ever served as an officer or executive of Schaeffler AG. The Declaration of Steven Crow overwhelmingly rebuts Plaintiffs' allegations of common executives or board members between the two entities listed in ADPs and EPPs' amended complaints. Moreover, DPPs' complaint makes no such allegations.

Likewise, Plaintiffs' allegation that employees of Schaeffler USA may be German nationals who have transferred between Schaeffler USA and Schaeffler AG is of no import. Common employees do not evidence parent company control, as employees generally do not engage in corporate decision-making. Regardless, the Declaration of

7

Steven Crow refutes Plaintiffs' allegation, noting that Schaeffler USA employs over 5,000 individuals and none work for both companies simultaneously. (Doc. 129, Ex. 1, Decl. of Steven Crow, General Counsel and Secretary of Schaeffler Group USA Inc. at ¶ 11).

Plaintiffs also allege that Schaeffler AG effectively controlled the policies, sales and finances of Schaeffler USA. Although true that Schaeffler AG provides tax, accounting, and legal coordination services to all of its subsidiaries and Schaeffler AG board members occasionally travel to the United States, these contacts are insufficient for a finding that the two entities are one and the same. Plaintiffs did not allege or provide evidence that the two companies share offices, budget, management, or financial records other than for regulatory purposes. There are no allegations that Schaeffler USA is undercapitalized or purchases supplies only from Schaeffler AG. As Plaintiffs correctly point out, Schaeffler AG does hold out Schaeffler USA as one of its "Worldwide Locations." Nevertheless, the contacts in Carrier Corp., upon which Plaintiffs heavily rely to support their argument, are for more extensive and numerous than in this case. Taken together, the allegations fail to demonstrate the type of dominion and control necessary to establish an alter-ego relationship. Consequently, bare allegations that Schaeffler AG exercises dominion over Schaeffler USA are insufficient for this Court to exercise general personal jurisdiction over Schaeffler AG, and thus the Court next considers whether it may exercise specific jurisdiction over Schaeffler AG.

2.      Specific Jurisdiction

Specific jurisdiction subjects a defendant to actions in the forum arising out of or relating to the defendant's contacts with the forum.   Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally laid out in Southern Machine Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401 F.2d at 381).

a.      Purposeful Availment

The first issue relative to specific jurisdiction is whether Schaeffler AG "purposefully avail[ed] [itself] of the privilege of acting in the forum or causing a consequence in the forum."  Mohasco, 401 F.2d at 381.  "Purposeful availment" means that the defendant's "contacts proximately result from the actions by defendant *himself* that create a 'substantial connection' with the forum State."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)).  This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as the result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or third person.'"  Id. at 475 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984);

9

Helicopteros, 466 U.S. at 417).  Plaintiffs argue two theories of specific jurisdiction: (1) the effects test and (2) stream of commerce.

i.   Effects Test

Plaintiffs argue that Schaeffler AG has a substantial connection with the forum because it engaged in a tortious conspiracy aimed at the United States and the effects of such were felt there.  See Calder v. Jones, 465 U.S. 783 (1984) (articulating the basis for the "effects test," which supports personal jurisdiction where defendant "expressly aimed" tortious conduct at the forum and the "brunt of the harm" is felt there).  In their consolidated complaints, Plaintiffs allege Schaeffler AG conspired to fix prices of Bearings sold into the United States market.

In support of their argument, Plaintiffs rely primarily on Carrier Corp., which held that a parent corporation alleged to have engaged in an antitrust conspiracy is subject to specific jurisdiction where its wholly-owned subsidiary sold products in the United States.  673 F.3d at 451.  In finding that the parent purposefully availed itself of the forum, the court noted that the parent "publicly claimed to retain full operational control" over the subsidiary.  Id. at 450.  In addition, the parent's executives "dominate[d] [the subsidiary's] board of directors" and the European Commission determined that the subsidiary "lacked any 'real business autonomy.'"  Id.  Lastly, the court noted that under the Calder-effects doctrine, the parent's contacts with the forum were "enhanced" because the parent expressly aimed the conspiracy at the United States and the brunt of the harm was felt there.  Id. at 451.

Unlike Carrier Corp., Schaeffler AG executives do not dominate, let alone simultaneously serve on, Schaeffler USA's board.  Schaeffler AG does not control the

day-to-day functions of its subsidiary, and there is no finding by a government regulatory body that the two companies are essentially the same entity.  Other than providing administrative support services, Schaeffler AG is uninvolved in the operation of Schaeffler USA.

Although Plaintiffs allege that Schaeffler AG was involved in the conspiracy, they failed to allege any specific conduct directly attributable to Schaeffler AG.  Moreover, Schaeffler AG does not manufacture, sell, or control Schaeffler USA's sale of Bearings in the United States.  Rather, it is merely a holding company.  Allegations of conspiratorial conduct alone do not suffice given Schaeffler AG's scarce contacts with the forum.

ii.   Stream of Commerce

Next, Plaintiffs argue that Schaeffler AG purposefully availed itself of the laws and protections of the United States by placing Bearings into the stream of commerce through its subsidiary Schaeffler Group USA.  This theory permits personal jurisdiction over a defendant that directs its products into a forum's market.  See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987).

The Court previously rejected this theory of purposeful availment based on similar facts in the Wire Harness case.  See In re Automotive Parts Antitrust Litig., 2013 WL 2456611, at *5 (E.D. Mich. June 6, 2013).  The defendant in that case sold wire harnesses to auto manufacturers, but did not control their distribution decisions, and thus the Court found no purposeful availment.  Although it is undisputed that Schaeffler AG does not manufacture or sell any products in the United States, Plaintiffs maintain that unlike the defendant in the Wire Harness case, Schaeffler AG dominates and

controls Schaeffler Group USA, which specifically targets the forum by selling Bearings that it knows will reach the United States.  Because the Court has already rejected Plaintiffs' attempts to impute Schaeffler Group USA's actions to Schaeffler AG, this argument is unavailing.

Consequently, the Court finds that Plaintiffs failed to demonstrate that Schaeffler AG purposefully availed itself of the forum under either theory.  Schaeffler AG has virtually no contacts in the United States other than through Schaeffler USA, a subsidiary upon which Schaeffler AG exercises no day-to-day control.  Personal jurisdiction over Schaeffler AG is therefore inappropriate.

b.      Arising From/Substantial Connection

Because Plaintiffs did not meet the first element of the test articulated in Mohasco, analysis of the remaining elements is unnecessary.  Each element of the test "represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked."  LAK, Inc. v. Deer Creek Enter., 885 F.2d 1293, 1303 (6th Cir. 1989).

B.      Jurisdictional Discovery

Plaintiffs ask for jurisdictional discovery in the event the Court finds the exercise of personal jurisdiction over Schaeffler AG is unwarranted.  Plaintiffs did not allege, however, what facts they expect to uncover.  Instead, they assert that their allegations are sufficient to raise a reasonable expectation that discovery would uncover relevant jurisdictional facts.

The Court disagrees and finds no reasonable basis to expect that further discovery would reveal contacts sufficient to support personal jurisdiction.  Schaeffler

12

AG is merely a German holding company that does not manufacture or sell any products and has no ties to the United States.  The fact that Schaeffler AG provides administrative support to one of its subsidiaries that has contacts with the United States cannot be used to subvert the corporate form.  The jurisdictional basis alleged by Plaintiffs is enitirely based on Schaeffler USA's contacts with the forum, and therefore the Court finds such discovery is unwarranted.  <u>Chrysler Corp. v. Fedders Corp.</u>, 643 F.2d 1229, 1240 (6th Cir. 1981) (affirming district court's denial of jurisdictional discovery which found no reasonable basis to expect that further discovery would reveal evidence to support jurisdiction).

## IV.   CONCLUSION

Accordingly, Defendant Schaeffler AG's motion to dismiss is **GRANTED**. Schaeffler AG is **DISMISSED** from the action.

**IT IS SO ORDERED.**

Date:  July 3, 2014                                      s/Marianne O. Battani
                                                          MARIANNE O. BATTANI
                                                          United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 3, 2014.

                                                          s/ Kay Doaks
                                                          Case Manager