UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION                        MASTER FILE NO. 12-md-02311

_____

In re: Bearings                             HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

All Cases                                   2:12-cv-00500
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO
DISMISS THE CONSOLIDATED AMENDED COMPLAINTS**

Before the Court is Defendant NSK Americas, Inc.'s Motion to Dismiss the Consolidated Amended Class Action Complaints of the Direct Purchaser Plaintiffs, the Dealership Plaintiffs, and the End-Payor Plaintiffs. (Doc. No. 115). The Court heard oral argument on the motion on June 4, 2014, and at the conclusion of the hearing took the matter under advisement. For the reasons stated below, the motion is **DENIED**.

**I.   STATEMENT OF FACTS**

Direct Purchaser Plaintiffs ("DPPs"), Automobile Dealership Plaintiffs ("ADPs"), and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Plaintiffs") filed separate consolidated class action complaints under Section 16 of the Clayton Act (15 U.S.C. § 26) for equitable and injunctive relief against several Defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiffs allege Defendants engaged in a conspiracy to inflate, fix, raise, maintain, or artificially stabilize prices of Bearings sold in the United States for which they seek damages and other appropriate equitable relief.

Generally, Defendants are in the business of manufacturing or selling Bearings, which are "friction-reducing devices that allow one moving part to glide past another moving part" and are used in the manufacture of automobiles. (Case No. 12-501, Doc. No. 100 at ¶¶ 43, 44).

Defendant NSK Americas, Inc. ("NSK USA") is a Delaware corporation with its principal place of business in Ann Arbor, Michigan. NSK USA is a wholly-owned subsidiary of NSK Ltd. ("NSK"), which is a Japanese corporation with its principal place of business in Tokyo, Japan. (Id. at ¶¶ 22-23). Plaintiffs allege that NSK USA, under direction of NSK, sold price-fixed Bearings that were purchased in the United States. (Id.; Case No. 12-502, Doc. No. 67 at ¶ 122; Case No. 12-503, Doc. No. 70 at ¶ 79). In addition, ADPs and EPPs allege that NSK USA and NSK have shared numerous executives and employees. (Case No. 12-502, Doc. No. 67 at ¶ 125; Case No. 12-503, Doc. No. 70 at ¶ 82). Plaintiffs' complaints further allege that NSK has been subjected to raids and investigation in several countries for anticompetitive behavior, including paying substantial fines in Japan. (Case No. 12-501, Doc. No. 100 at ¶¶ 64-65, 73-74; Case No. 12-502, Doc. No. 67 at ¶¶ 9-13; Case No. 12-503, Doc. No. 70 at ¶¶ 7, 129, 132). The Department of Justice ("DOJ") has also issued a subpoena to NSK regarding one of its United States subsidiaries requesting information about the sales of Bearings. (Case No. 12-501, Doc. No. 100 at ¶ 80; Case No. 12-502, Doc. No. 67 at ¶ 184; Case No. 12-503, Doc. No. 70 at ¶ 141).

Plaintiffs allege that the structure of the Bearings market is conducive to price-fixing and collusion given the high barriers to entry, inelasticity of demand, high concentration, and numerous opportunities to conspire. (Case No. 12-501, Doc. No.

100 at ¶ 49; Case No. 12-502, Doc. No. 67 at ¶ 166; Case No. 12-503, Doc. No. 70 at ¶ 115). The complaints further allege that the market for Bearings is controlled by a small number of manufacturers, including NSK USA. (Case No. 12-501, Doc. No. 100 at ¶ 51; Case No. 12-502, Doc. No. 67 at ¶ 163; Case No. 12-503, Doc. No. 70 at ¶ 108).

**II.  STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

3

Importantly, NSK pled guilty to its participation in the conspiracy on September 19, 2013. (Case No. 12-503, Doc. No. 82, Ex. 1). The Plea Agreement requires full cooperation from NSK to provide documents and information relating to the conspiracy. It also requires cooperation from any subsidiaries in which NSK has a greater than 50% ownership, including NSK USA. Although not pled in Plaintiffs' complaints, the Court has taken judicial notice of the plea agreement and it may be considered by the Court for purposes of this motion. See Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011) (court may consider public records if referred to in the complaint and are central to its claims without converting a motion to dismiss into a motion for summary judgment) (citing Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008)).

### III. ANALYSIS

NSK USA argues that Plaintiffs' complaints allege wrongdoing against NSK, not NSK USA. Although NSK pled guilty to its participation in the conspiracy, the plea does not specifically mention NSK USA nor did NSK plead guilty to any conduct that occurred at NSK USA. In addition, NSK USA asserts that Plaintiffs failed to allege sufficient facts for the Court to disregard its corporate form and hold it accountable for the actions of its parent company. Last, it claims that EPPs' complaint fails to specifically name it in any of the counts, instead referring only to "Defendants," which is insufficient to state a claim under Rule 8. The Court finds Defendant's arguments unpersuasive.

### A. Alter-Ego Liability/Piercing the Corporate Veil

Generally, "[a] parent corporation [ ] is not liable for the acts of its subsidiary, even if its subsidiary is wholly-owned." Corrigan v. U.S. Steel Corp., 478 F.3d 718, 724 (6th Cir. 2007) (citing United States v. Bestfoods, 524 U.S. 51, 61 (1998)).  However, under Michigan law, the corporate veil may be pierced if "the corporate entity [is] a mere instrumentality of another individual or entity." Rymal v. Baergen, 686 N.W.2d 241, 252 (Mich. Ct. App. 2004).  In order for courts to treat the parent and subsidiary as a single entity, the "corporate entity must have been used to commit a wrong or fraud" resulting in an "unjust injury or loss to the plaintiff." Id.

In their respective complaints, Plaintiffs allege that NSK exercised control over the activities of NSK USA, specifically the sale of Bearings into the United States market.  (Case No. 12-501, Doc. No. 100 at ¶ 22; Case No. 12-502, Doc. No. 67 at ¶ 122; Case No. 12-503, Doc. No. 70 at ¶ 79).  Plaintiffs also allege that the two companies have shared numerous executives, including Bernard Lindsay, who served as COO for NSK USA and then as CEO and Vice President of NSK, and Masahide Matsubara, who served as CEO of NSK USA and then as senior Vice President of NSK. (Case No. 12-502, Doc. No. 67 at ¶ 125; Case No. 12-503, Doc. No. 70 at ¶ 82).  In addition, the complaints allege that one of NSK's United States subsidiaries received a subpoena from the DOJ requesting information regarding sales of Automotive Bearings. (Case No. 12-501, Doc. No. 100 at ¶ 80; Case No. 12-502, Doc. No. 67 at ¶ 184; Case No. 12-503, Doc. No. 70 at ¶ 141).  Moreover, the plea agreement between the United States and NSK requires full cooperation from NSK and its subsidiaries, including NSK USA.  (Case No. 12-503, Doc. No. 82, Ex. 1 at ¶ 13).  In return, the United States promised "that it will not bring further criminal charges against the defendant or any of

its related entities for any act or offense committed before the date of signature of this Plea Agreement that was undertaken in furtherance of an antitrust conspiracy involving the manufacture and sale of bearings." (Id. at ¶ 15).

Defendants assert that the Court's decision in the Wire Harness case with respect to Tokai Rika, Inc. and TRAM, Inc. compels a different result because unlike the case at hand, the parent company pled guilty to specific conduct that occurred at its United States subsidiary. See In re Automotive Parts Antitrust Litig., No. 2:12-cv-00100, 2013 WL 2456013 (E.D. Mich. June 6, 2013) (denying Defendants' motion to dismiss under Rule 12(b)(6)).  Further, Defendants argue that the Sixth Circuit usually requires the plaintiffs alleging a price-fixing conspiracy to "specify how [each] defendant [was] involved in the alleged conspiracy." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 445 (6th Cir. 2012) (quoting In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 905 (6th Cir. 2009)).  However, the court in Carrier Corp. noted that the plaintiffs alleged that the parent sold the price-fixed product to the subsidiary in the United States, that the parent exercised control over the subsidiary, and that the parent held out the two companies as a single enterprise with overlapping executives. Id. at 445-46.  Given the extensive allegations, the court noted that it is not necessary for Plaintiffs to "delineate in the complaint the role each subsidiary played in the conspiracy." Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 446 (6th Cir. 2012).

Although the fact that Tokai Rika, Inc. pled guilty to conduct that occurred at its United States subsidiary bolstered the plaintiffs' complaint in the Wire Harness case, such allegations are not essential.  Here, Plaintiffs make similar allegations regarding NSK's exercise of dominion and control over its United States subsidiary.

6

Consequently, Plaintiffs need not explicitly allege NSK USA's role in the conspiracy, and the Court declines to impose such a burden on Plaintiffs at this stage.

This result is consistent with the Court's prior holding in the Wire Harness case with respect to G.S. Electech, Inc. and its wholly-owned subsidiaries. See In re Automotive Parts Antitrust Litig., No. 2:12-cv-00102, 2013 WL 2456613 (E.D. Mich. June 6, 2013). In that case, the Court found that the plaintiffs' allegations regarding the parent company's control over the subsidiaries along with the parent company's guilty plea were sufficient to withstand a motion to dismiss. Id. at *3. Although the plaintiffs did not detail the specific conduct of the subsidiaries, the allegations as a whole created an inference that the subsidiaries participated in the conspiracy. Id. at *4. Notably, the facts alleged in the Wire Harness case are substantially similar to those alleged here.

Consequently, viewed in their entirety, the allegations support an inference that NSK USA participated in a price-fixing conspiracy aimed at the United States under the direction of NSK. Given the fact that NSK pled guilty to its involvement in such a conspiracy and Plaintiffs' allegations that NSK USA operated at the direction of NSK, it is plausible that NSK USA knowingly sold price-fixed Bearings in the United States market. As such, Plaintiffs have met their pleading burden.

### B.     End-Payor Plaintiffs' Complaint

Last, NSK USA argues it must be dismissed from the EPPs' complaint because "it is not named in any of the four claims for relief . . . ." (Doc. No. 115 at 9). EPPs' complaint alleges that "Defendants JTEKT Corporation, Nachi-Fujikoshi Corp., NSK Ltd., Schaeffler AG, AB SKF, NTN Corporation and NTN USA Corporation (all as defined below, and collectively "Defendants") manufacture, market, and sell Automotive

Bearings throughout the United States." (Case. No. 12-503, Doc. No. 70 at ¶ 4). NSK USA argues that because is not listed in the above cited paragraph, EPPs failed to state any claims against it in the complaint.

Clearly, the complaint, read as a whole, names NSK USA as a defendant. NSK USA is listed under the "NSK Defendants" and EPPs include enough allegations to plausibly implicate NSK USA in the price-fixing conspiracy. (Case No. 12-503, Doc. No. 70 at ¶¶ 79-83). Thus, the Court rejects Defendant's narrow reading of EPPs' complaint.

### IV. CONCLUSION

Accordingly, Defendant's motion is **DENIED**.

**IT IS SO ORDERED.**

Date:   July 23, 2014                                s/Marianne O. Battani
                                                     MARIANNE O. BATTANI
                                                     United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on July 23, 2014.

                                                     s/ Kay Doaks
                                                     Case Manager