UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

IN RE: AUTOMOTIVE PARTS
ANTITRUST LITIGATION

MASTER FILE NO. 12-md-02311

_____

In re: Bearings

HON. MARIANNE O. BATTANI

_____

THIS DOCUMENT RELATES TO:

All Cases                                              2:12-cv-00500
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINTS**

Before the Court is Defendants Schaeffler AG and Schaeffler Group USA Inc.'s Motion to Dismiss the Direct Purchaser, Automobile Dealer, and End-Payor Plaintiffs' Consolidated Amended Complaints. (Doc. No. 114). The Court heard oral argument on the motion on June 4, 2014, and at the conclusion of the hearing took the matter under advisement. For the reasons stated below, Defendants' motion is **DENIED**.

**I.    RELEVANT FACTS**

Direct Purchaser Plaintiffs ("DPPs"), Automobile Dealership Plaintiffs ("ADPs"), and End-Payor Plaintiffs ("EPPs") (collectively referred to as "Plaintiffs") filed separate consolidated amended class action complaints alleging several federal and state law claims against Defendants. Plaintiffs allege Defendants engaged in a conspiracy to "inflate, fix, raise, maintain, or artificially stabilize prices of Bearings sold in the United States" for which they seek damages and other appropriate equitable relief. See e.g. (Case No. 12-501, Doc. No. 100 at ¶ 1). Generally, Defendants are in the business of

manufacturing or selling Bearings, which are defined in Plaintiffs' complaints as "friction-reducing devices that allow one moving part to glide past another moving part" and are used in the manufacture of automobiles. See e.g. (Id. at ¶¶ 43, 44).

Defendant Schaeffler AG is a German corporation with its principal place of business in Herzogenaurach, Germany. It does not own property or conduct business in the United States. Schaeffler AG maintains that it is a holding company for the Schaeffler group of companies around the world and does not manufacture or sell Bearings itself. (Doc. No. 113, Ex. B, Decl. of Klaus Deißenberger, General Counsel for Schaeffler AG at ¶ 4). It is the 100% shareholder of Schaeffler Group USA, Inc. ("Schaeffler USA"), also named as a Defendant in Plaintiffs' consolidated complaints. (Id. at ¶ 4). In addition, Schaeffler AG does not have offices or registered agents in the United States and has never been incorporated in the United States. (Id. at ¶¶ 6, 7, 9).

DPPs allege that "Schaeffler AG – directly or through its subsidiaries, which it wholly-owned and controlled – manufactured, marketed, or sold Bearings that were purchased in the United States, including in this District, during the Class Period." (Case No. 12-501, Doc. No. 100 at ¶ 24). ADPs allege similar facts, but also allege that "Schaeffler Group USA and Schaeffler AG have shared numerous executives." (Case No. 12-502, Doc. No. 67 at ¶ 131). In addition, EPPs also include similar allegations as ADPs in their complaint. See (Case No. 12-503, Doc. No. 68 at ¶¶ 84-88). Collectively, Plaintiffs argue that Schaeffler AG and Schaeffler USA participated in the alleged price-fixing conspiracy aimed at the United States.

Plaintiffs further allege that the Bearings market is conducive to anticompetitive conduct. Specifically, the market has high barriers to entry, has inelasticity of demand,

is highly concentrated, and provides numerous opportunities to conspire. (Case No. 12-501, Doc. No. 100 at ¶ 49; Case No. 12-502, Doc. No. 67 at ¶ 166; Case No. 12-503, Doc. No. 70 at ¶ 115). The complaints also allege that the market for Bearings is controlled by a small number of manufacturers. (Case No. 12-501, Doc. No. 100 at ¶ 51; Case No. 12-502, Doc. No. 67 at ¶ 163; Case No. 12-503, Doc. No. 70 at ¶ 108). DPPs allege that eleven Defendants, including Schaeffler AG, control 60% of the global market share. (Case No. 12-501, Doc. No. 100 at ¶ 52). In addition, DPPs allege that during the past decade, "the number of [Bearings] firms has been steadily decreasing and market share is continually shifting towards the Bearings industry's largest participants." (Id. at ¶ 51).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows district courts to dismiss a complaint which fails "to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), the plaintiff must show that his complaint alleges facts which, if proven, would entitle him to relief. First Am. Title Co. v. DeVaugh, 480 F.3d 438, 443 (6th Cir. 2007). "A complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." Weiner v. Klais & Co., 108 F.3d 86, 88 (6th Cir. 1997).

When reviewing a motion to dismiss, the Court "must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Although

the federal procedural rules do not require that the facts alleged in the complaint be detailed, "'a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.'" Twombly, 550 U.S. at 555; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In Twombly, the Supreme Court considered the pleading requirements necessary to withstand a motion to dismiss relative to a Section 1 Sherman Act claim. It held that the complaint must contain enough factual matter to "plausibly suggest" an agreement:

> Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.

550 U.S. at 556.

### III.  ANALYSIS

On July 3, 2014, the Court entered an Opinion and Order Granting Schaeffler AG's Motion to Dismiss for Lack of Personal Jurisdiction. (Doc. No. 149). The Court found that Plaintiffs' allegations failed to demonstrate that Schaeffler AG and Schaeffler USA are alter-egos for purposes of personal jurisdiction only, especially given the fact that Schaeffler AG does not manufacture any products that ultimately enter the United States market. Thus, Schaeffler AG's motion to dismiss is moot, and the Court will focus its analysis solely on whether Plaintiffs' allegations are sufficient against Schaeffler USA.

4

Schaeffler USA argues it should be dismissed from this action for two reasons: (1) Plaintiffs failed to allege Schaeffler USA's direct participation in the antitrust conspiracy, and (2) in the absence of direct evidence, Plaintiffs' failed to sufficiently allege a theory of parallel conduct. After review, the Court finds Plaintiff properly alleged direct involvement in the conspiracy, and therefore will only address Schaeffler USA's first argument.

In the complaints, Plaintiffs allege that Schaeffler USA is a Delaware corporation with its principal place of business in Fort Mill, South Carolina. (Case No. 12-501, Doc. No. 100 at ¶ 25; Case No. 12-502, Doc. No. 67 at ¶ 128; Case No. 12-503, Doc. No. 68 at ¶ 85). Plaintiffs further allege that Schaeffler USA sold Bearings that were purchased in the United States, including in this District, during the class period. (Id.) In addition, the complaints allege that Schaeffler USA directly participated in meetings to further the objectives of the conspiracy. (Case No. 12-501, Doc. No. 100 at ¶¶ 100-106; Case No. 12-502, Doc. No. 67 at ¶¶ 175-79; Case No. 12-503, Doc. No. 68 at ¶¶ 159-64). Thus, contrary to Schaeffler USA's argument, the complaints sufficiently allege its direct participation in the price-fixing conspiracy. The Court must credit Plaintiffs' allegations at this stage. See Twombly, 550 U.S. at 570 (stating that the court must "accept all factual allegations as true").

Moreover, the complaints sufficiently allege a global conspiracy, which bolsters Plaintiffs' allegations that Schaeffler USA directly participated in price-fixing Bearings in the United States. Schaeffler USA is alleged to have conspired with the JTEKT, Nachi-Fujikoshi, NSK, SKF, and NTN Defendants, all of which were investigated by a governmental entity and/or pleaded guilty to price-fixing Bearings in the United States or

a foreign country. Plaintiffs also included extensive allegations that the global Bearings market was conducive to anticompetitive conduct during the Class Period.

Viewing the allegations as a whole, the Court finds that Plaintiffs sufficiently alleged Schaeffler USA's direct participation in a conspiracy aimed at the United States. Schaeffler USA is incorporated and manufactures Bearings in the U.S. It is alleged to have conspired via secret meetings with several other Defendants who have admitted to their participation in such a conspiracy. The fact that Plaintiffs' complaints frequently refer to "Defendants" instead of specifically identifying the separate actions of each Defendant does not undermine the sufficiency of the allegations outlined in the complaints. Consequently, it is plausible that Schaeffler USA directly participated in the alleged conspiracy and Plaintiffs have met their pleading burden at this stage.

## IV. CONCLUSION

Accordingly, Defendants' motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Date:  September 23, 2014               s/Marianne O. Battani
                                        MARIANNE O. BATTANI
                                        United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 23, 2014.

                                        s/ Kay Doaks
                                        Case Manager